Good morning, thank you for seeing the news. We will now hold a status conference in the case of Douglas O'Connor v. Uber Technologies, Inc. Number 14-16078. Counsel, we had asked you to come in, in this case as Nelson, pending on our docket for more than a year. We were told by both of you a year or so ago that the case was pending settlement, with approval by the district court, which apparently has yet to be finalized. And now we have some additional Uber appeals pending in our court. The clerk has tentatively scheduled for argument in June. And we thought we'd better have you come in and tell us where you are on the litigation and see if we can figure out, from a case management standpoint, what makes the most sense. This is Liz Bird. Thank you, Your Honor. So, there are a number of appeals here, and it can get a little complicated, but for the appeal that we are before you on today, this is 14-16078. This is Uber's appeal to Judge Shen's original orders, way back in the beginning of the case, 2013 and 2014, where he issued corrective notice under Rule 23D, because he believed that the original 2013 arbitration clause did not contain sufficient notice for class members, the on-count provision was too burdensome, et cetera. And those orders led to Uber promulgating a new arbitration clause in 2014. Like this court's ruling in Mohamed, frankly, I think this appeal is moot, because this court essentially found that both the 2013 and the 2014 agreements were enforceable, so that's the difference between the two. I don't think it has any bearing any longer on this litigation. This appeal has just been sitting out there while other events have unfolded. Frankly, I think this appeal is moot. The parties agreed to report to you that we jointly request that this appeal be deferred, just because there are a lot of questions about how this will all play out. Frankly, I would frankly prefer that you dismiss it, rather than get into another briefing or argument on that, because Uber agreed to put it to the side. We agreed to just ask Uber to put it to the side. Now, in my discussions with Uber, I've been trying to figure out why they think this is moot. I think the reason that they think this is moot is that original order, which they're still bound by, precludes Uber from setting out an arbitration agreement with no opt-out provision. They understand themselves to be required now to include an opt-out provision in any agreement. Now, given that your decision in Mohamed turned to the large part of the fact that there was an opt-out provision, and I think Uber is totally uncertain about how it wants to handle this, about whether it really would want to have an arbitration clause with no opt-out provision. So, I think that's why they're a few times to put this appeal to the side while the other appeals get decided and made. I think this is moot in my eyes, so I am going just to ask that this appeal be deferred  One of the concerns that I had, and frankly I have not read the briefs in the Jane cases, but I did look at our internal staff attorney inventory notes that highlight which issues are pending and which of the Jane appeals. There seems to be a fair amount of overlap in legal issues, some of which I think are controlled by our decision in Mohamed. And so I'm a little bit unsure as to exactly what you're asking that I'd serve you to do in some of those appeals. And from a judicial economy and administration standpoint, would we no longer be re-plowing the same ground that we've already plowed? Right, and the pending appeals are not. I mean, obviously the parties can make arguments regarding your decision in Mohamed, but they raise different issues. As you'll recall, the issue of the D.R. 4 initiative, we'll call it the NLRA argument. You had a footnote, footnote 6, where you said that the plaintiffs in that case had waived the issue, but then you went on to say that even if they had waived it, it would not have been successful because there's an op-ed provision. But when there are additional proceedings before the district court on the NLRA issue, is there an expanded record that was not before us in Mohamed? Yes, we had briefed. I had briefed the D.R. 4 issue to the district court. The plaintiffs in Mohamed had not waived or served that issue below. So it had been waived in Mohamed. It was not waived in our case. And also there is an additional argument that we briefed in our case before the 9th Circuit regarding the op-ed issue and why there was no new case that was no longer above law. Noted that was briefed in Mohamed. Now, does this have to waive to the Supreme Court? Or does it make a difference? In other words, Mohamed says it's our opinion, and you have an op-ed to count those people who are subject to the arbitration agreement and have to provide all their arguments to the arbitrator. Regardless of how the Supreme Court rules on their NLRA cases, does that just mean that the arbitrator would have to hear class arbitrations? It doesn't necessarily mean that the, I think we said these issues were severable in Mohamed. Well, I don't, in this specific issue, think the class action waiver, if the Supreme Court determines the class action waiver is illegal under NLRA based on their predicting cases, there would then be a question that I don't believe has been specifically addressed before this Court as to whether the class action waiver itself is severable, and thus whether a class could go through arbitration or whether a class action would have to proceed in court. I just, there are a lot of arguments that I can see would be made on both sides, and that just hasn't been fleshed out quite yet. I did just want to point out, I'm sure the Court is aware of what I was about to say, and in your footnote 6 where you addressed the NLRA issue, even though it had been waived,  in my view, in my view, in my view, it means that you needed the rest of the note 6 and took that out, which I saw as a signal that it hadn't been properly raised or argued in that case. It has been fully briefed and developed in our case. So, Simone, you said that it looks like the cases that may be scheduled for issue are disposed of by Mohamed. I would caution that it hasn't been. It's a briefed issue. It wasn't briefed. I'm just making some of the things that concerns me. There is no arbitration that's pending. The parties have not actually started arbitration, have they? Well, because there is currently a certified class here, we are obviously waiting to see how this case develops. I have started filing some arbitrations that are outside the class because, obviously, we don't know exactly what's going to play out here. I understand your answer being no, not with regard to the parties that are currently before the night, sir. Correct. So, I mean, this case is taking on what I would draw an analogy of criminal law to a slow plea where the defendant essentially is in a contested guilt, but we're going to trial it anyway to establish it. The last time you were in front of me, I thought that this case was going to get resolved, and instead we seem to be in this game of sort of hopscotch between the District Court and the Court of Appeals as to who's going to go forward on which piece of the litigation that we don't want to end or foreclose any of our alternatives in both courts, and I'm feeling like we're getting a little bit whipsawed here. Well, that is exactly why I filed this motion last night, which we just handed out to you, Judge Chalman, which, because we did it, we had a status conference just yesterday before the District Court in which I raised the issue that none of this matters. The enforceability of Hoover's arbitration clause simply is not relevant to the appropriate scope of the class in this case because the plaintiffs in that corner opted out of arbitration and thus did so and continue to have done so on behalf of the class. If that's the case, why shouldn't the remedy be to dismiss those named plaintiffs as punitive class representatives in the class litigation and then substitute them for parties that actually have a lot of case or controversy? Well, you know, I've been making a very odd argument that I would urge you. Well, I would urge you, first of all, to create the motion that we filed last night. There was a specific case. Okay. It was a staff opportunity to respond to. Right, so that's why I've requested that we either be permitted the opportunity to provide a supplemental briefing to this court or remand it to the District Court because when I tried to raise this yesterday with the District Court, he said to me, so you're saying this argument moots the appeals. And I said, well, essentially, yes. He said, well, didn't you need to take that to the Ninth Circuit? And I said, okay, I will. See, I filed the motion last night. You come over to the Ninth Circuit with a motion to dismiss the appeals as moot, in which case, then, everything goes back to the District Court and whatever's left of it, Judge Jim can resolve. But instead, everybody seems to want to hang on sort of like a tentacle in each court, and this is not making a lot of sense to me. So that's why in my motion, I asked Judge Jim to let us argue as though he said, well, I think you need to take this up with the District with the Ninth Circuit. So now I'm asking, because he said that, I'm now asking this court, well, please let us know, do you want to decide it or should we have it? So this court decides to take it? There's no settlement at this point as to any of the remaining cases. No, no, we reached a settlement. The District Court did not approve it. I'm sorry. There's no settlement. Correct. So... I'm going to hear from you to decide what happens. I'm going to hold this to the District opening and closing rebuttal. Let's come back up afterwards if I think it's fruitful. Okay. All right. Let's hear from you. Thank you, Ma'am. This is the Court of the Evangelist on behalf of Hoover. Your Honor, there are several appeals pending before this court, and the court has indicated that it intends to, whether it's considering the stage-long argument in June, and we absolutely believe that all of those appeals should go forward, including the appeal in which this court called today's status conference, the appeal of Judge Chin's original 23-D order. So let me address for a moment first that appeal, and that is not moot. In fact, those orders, the order that Judge Chin entered at the outset of the case, is still in existence, and it precludes Hoover from reverting back to the 2013 agreement, which this court in Mohamed helps enforce. Did you ask the district court to take in those orders? No, Your Honor, because the issue is before this court, and there are other... The area is taken care of by Mohamed. Why wouldn't you ask to dismiss this appeal under the district court to let Mohamed enter these orders no longer? Okay, the issue in Mohamed, did it not? Yes, Your Honor. The jurisdiction now has been transferred back to the district court. In the O'Connor case, there is also an appeal pending in this court regarding the enforceability of those agreements, and the plaintiff's counsel did not just discuss the additional arguments, excuse me, that are raised in that appeal that were not raised in Mohamed. So we believe that all of these appeals relate to the issues in Mohamed. Let me just just point before you. You just said, because I heard the argument from opposing counsel, that if we ruled in Mohamed that the 2013 agreements are subject to arbitration and that the NLRA issue was waived, why shouldn't the district court then order the 2013 issues to arbitration? Because that is how the law of the case, and without regard to additional arguments that could have been but were not raised in a timely fashion, Mohamed's ruling is binding. What I don't understand is this additional issues that are being raised in order to, it looks to me like going in and running around our order in Mohamed. Your Honor, plaintiff's counsel believes that there are additional arguments that she has that were not raised by the plaintiffs in Mohamed but more importantly, there's also the appeal of the district court's class certification order. This court granted Hoover's 23th petition, and that order hinges also on arbitration because at the heart of that is whether you can start a third class plaintiff with valid and binding arbitration agreements that contain class waivers, and the district court has expressed that it's awaiting this court's decision on that issue, so all of these appeals, I believe should be sent to Mohamed. The arbitrator basically gets to decide those questions, and if the matter is subject to arbitration, then it's the arbitrator and not the district court, and the only exception we carved out was the Plaga claims. And I'm just recollecting our opinion. Your Honor, this court held that those agreements were enforceable and that there's a delegation clause in the agreement, but the district court is awaiting this court's decision on the class certification order, and there are additional issues on whether a class can be certified. This is being outside, this is locked down, because it would be up to the arbitrator to get to decide on whether it was an issue or any arguments from them, so it's not up to them. Your Honor, those parties have not agreed to class arbitration, so if the class waiver is not valid and individual arbitration would be answered, plaintiff's counsel is already bringing some arbitrations, but... But are the 2013 agreements completely already ruled on that? Again, the parties did not agree to class arbitration, but... The plaintiffs can arbitrate individually, but the district court can arbitrate individually. And that's what we believe is the correct course, that individual arbitration is the answer, but the district court disagreed. And in light of... Because the district court is looking to us... Yes. To clarify... Yes, Your Honor, and... We really do. Yes, Your Honor, and we had a conference yesterday, and the district court stated the district court proceedings, awaiting the district court's decisions in all of the pending appeals. So that's very clear, the district court said a conference, a joint status conference, after the presumed argument date for these appeals. So Your Honor, I mean, one of the things that concerned me in your joint status report was your request that we stay action on O'Connor until after all of the June cases have been finally resolved. But, I mean, that means including, assuming both sides or one or more sides are unhappy, petitions for in-bank re-hearing, petitions for certiorari. I mean, we could be talking about years before there's a penalty. We believe that all of the cases should be scheduled for argument. We had originally been agreeing to stay in the first O'Connor 23-D appeal, which is the case in which the status conference is occurring. But we think that that case should also proceed to argument. There was a possibility that some of the later appeals would resolve issues that then would bear on that. And so in the interest of judicial economy, in the light of the settlement that was proposed at the time and pending, we agreed to put that off. However, at this point, we think it makes sense, and to Your Honor's point, it makes sense to consolidate all of these cases, hear them once and for all, and resolve all of these issues so that the parties can proceed accordingly in the district court. So we would ask that this appeal, in today's case, be also heard in June. And we think it makes sense to consolidate all of them in light of that. And in addition, just on counsel's late filing last night in the other pending appeals, first, that argument has been waived. It was never raised before in the district court in three and a half years of litigation. And in any event, it would completely contradict the liberal policy in favor of arbitration in the FAA and the Supreme Court's decision in Concepcion to hold that an individual who opted out of arbitration before later filing a punitive class could somehow be deemed to have opted out on behalf of all of the punitive class in violation of the explicit terms of the arbitration agreement. So we think that argument, it's not going to have any merit in any event, it's been waived. But, we'll listen for any more questions. Any more questions? Okay, thank you. Thank you. For all your honors, I would urge you again to look at the bigger stuff in case they're cited in the motion last night Yes, Georgia Supreme Court. Right, and we found nothing in the Ninth Circuit that is addressed this issue. This issue is an issue of first impression in this circuit. And it has not been waived. What happened was when the district court invalidated Hoover's arbitration clauses in December of 2015, the next day, Hoover moved to compel arbitration for all unnamed absent class members. The district court denied that motion that day, so we did not have the opportunity to raise this argument. So, even if, even if all these appeals were to go forward in a year and a half or two or three years from now, it's determined, finally, conclusively, by an en banc or a Supreme Court that all of Hoover's arbitration agreements are enforceable, there is still this open question that all claimed to believe plaintiffs under the regime of Bickerstaff have opted out on behalf of everybody else that's in the whole pipe of class representatives. It has not been addressed in this circuit, so we have not waived it. We didn't have the opportunity to raise it. Below, we're asking you now to allow us either to breathe it here or we may ask the district court for additional consideration before we spend the next two or three years resolving all these other appeals, which might be for naught. Yes, it does look good. I think it has a question. Oh, oh. It seems that they're all calling the court on the case that's in front of us, the 14-1 over. Was there any mention of this argument in the brief you filed on the case? Well, the Bickerstaff decision was decided in 2014. I'm not asking that the Bickerstaff decision was made. I was asking whether this argument was made. You may, in fact, have made it without authority, but there's always a first time. I mean, was this argument made in the brief filed with us? Well, in the appeal, the court before you on today, this wasn't an argument that would have been made at that time. Well, so this was a fair arbitration clause involved in that. If your position is that your client had opted out, was that subject to arbitration, or would it have been seen as an argument that would have been made at that time? Was it? Well, I'll ask you a simple question. Was it? It was not, because the issue had not yet been presented. At the very beginning of this case in 2013, I didn't have a crystal ball because it would happen in the future. Just in case, the court ultimately held that class number, absentee class numbers who didn't opt out could not follow what representative had done to opt out on their behalf. I started the case by moving to, by asking the district courts to hold the arbitration clause not an enforceable period, and that led to years of litigation on that issue. The question is whether the absent class numbers would actually be valid. Our arbitration clause did not arise until December 10th, 2015 when the court certified the class, and he then denied a response to the bill of arbitration before I had an opportunity to make any such argument. Well, the decision to certify the class in O'Connor came before our decision of O'Hammed, correct? Our decision was in December 2018. So, as the council says, a live issue in our appeal is that a class was certified, and therefore, despite the decision of O'Hammed regarding the 2013 and 2014 agreements, there's no ability for any of those individuals who opted out to go to arbitration, which is what our opinion of O'Hammed's in. Do you agree that that's still a live issue in our case and the appeal that's pending before us in 2018? I'm sorry, Your Honor, I just lost you there. Do I agree that that's still a live issue? As to whether the individuals who have opted out of the arbitration agreement now have to take their complaints to arbitration, that's what we held in O'Hammed. Did they opt out? They would have to go to arbitration? If they didn't opt out, so they opted out of any claim to be part of a class of opt-outs, they'd have to go to arbitration. In O'Hammed, you hold the district court's basis for finding an arbitration clause to be invalid was wrong. You did not, or could you hold that there was no basis for holding the arbitration clause to be invalid? We have a different issue that wasn't briefed or that was waived in O'Hammed that violates the NLRF. So that is not a new one. This issue that you have to bring before the arbitrator. Exactly, yeah. In part of our decision in O'Hammed, if these arbitration clauses are enforceable and to the extent that there are any other issues, then they have to be raised in arbitration. Yeah, and I can see exactly why in this brief and the appeals, and the other appeals, if the Supreme Court affirms Morris and holds that the NLRA approved it as a class action waiver that an individual cannot be to invoke individual arbitration to determine whether or not the arbitration clause is viable or invalid, that itself would violate Morris and the NLRA. So the delegation clause that would compel individualized arbitration if Morris stands would be invalid under the NLRA. So you'd be entitled to collective treatment. Where would the treatment be? Is there something to be imposed? I'm not saying you'd ever agree to class arbitration, and yet, if the collective treatment, if the class prohibition disappears, is it clear where the adjudication would take place? No, no, frankly, it's not, and there's a more recent decision from the Ninth Circuit, and there just came out a couple of weeks ago, the Terminix case, which I believe suggests that if a class action waiver is not enforceable, then a class may proceed in arbitration, notwithstanding the U.S. Supreme Court's Steele-Nelson decision. I'm sure there is more that's going to be said and argued and litigated on that question, but that's how I read the Terminix decision. So what I sent it for is that issue hasn't been fully addressed in brief in this case. So Terminix is, says what you just said, it's an adjudication. It seems to be that Muhammad, the members, the drivers, the plaintiffs who have not been out are now going to the arbitration, and the only thing that would be, in district court, would be the opt-out to the continuous wear of the class if the district courts are fined that small group. Okay, but again, the Muhammad decision has not decided the NLRA issue, which is now pending in this case, and also, for what you were saying, regardless of how the Supreme Court rules, the arbitrator can consider those issues, whether the drivers who did not opt-out are going to class treatment or collective treatment. Well, the arbitrator can, but there's also a lot of misconceptions going on out there in the world about what Steele-Nelson means. We would be in arbitration arguing about whether you can have a class arbitration but my point is that, of course, it's the law. No one should be compelled individually to have to be making that argument. You have to sort it out, of course. The one thing I'd like to agree with you about, what it makes, if we do consolidate all of these actions, what it makes sense to permit the parties to file new briefs so that these arguments, I'm thinking of one consolidated brief addressing all the issues that are pending in all, I guess it's now six cases, five cases. Yes, including the speaker's chat part. Yeah. I would agree that that would make a lot of sense. Because it seems to me that the briefs that have been filed before now are now stable given all of the developments that have occurred in the litigation. That's probably correct. Let's hear from the other side on those issues. Your Honor, first on the enforceability of the class waiver, Uber's arbitration agreement carves that out for the court to decide. But that's 2013, on the right side of 2014. Yes, that's right. But again, the same point is that the parties have not agreed to class arbitration. But just to Your Honor's question regarding the briefing, it's not necessary at this point and our briefing, most recent briefing, does address the applicability of the Mohammad decision. So all of these issues have been addressed, save for the argument the plaintiff just raised last night, which was waived at any event. And we can respond. We'd be happy to respond to that brief. But that's an LRA issue. That has been briefed. And they are gone. It would have been gone. Yes. Yes, Your Honor, all of these issues have already been briefed. So there's really no point and we think there shouldn't be any argument. The only issue, as we ordered or permitted in this qualitative briefing, would be this issue. Yes, and Your Honor, we would like to file a response in opposition to these briefings. And so we do respond to that and we think it does not make sense to redo all the briefing in several appeals because all of these issues have already been briefed. And we think that the most efficient course would be to simply proceed with the argument that is hopefully going to be scheduled in June so we can get a resolution rather than inviting this further change. Your Honor, the main thing is to file a response in opposition to these briefings. Do you know what the Supreme Court's timing is with regard to the Morris issue? Your Honor, the court has indicated that argument will be scheduled in the fall. Next year? Next year. Next year. And why don't we need to hold this to hear what the Supreme Court has to say for those cases? Well, Your Honor, this court's decision in Bloomingdale's, John Mulhermione v. Bloomingdale's, holds that an opt-out and an arbitration agreement eliminates any concern under the NLRA even if the NLRA can leave. Exactly. So we think that this court can proceed to decide our cases because the agreements do include an opt-out. And under this court's decision in Bloomingdale's, that is the end of the matter. But if the court disagrees for some reason with that and would like to hear from the Supreme Court, then, of course, that is an option as well. But we think that it's unnecessary. Can I take anything else? No, Your Honor. All right. Thank you. Just in terms of argument, there's one last word. Thank you. So, again, just yesterday in Arboretum, we submitted on the arbitration issue. We've submitted our arguments. Rightfully, Bloomingdale's is no longer with law. That's an issue that is briefed. It may well make sense for this court to hold off on any of these issues until the Supreme Court decides for us because a lot of this might be for naught and we might end up having to then figure out what the Supreme Court's ruling means vis-a-vis this case, which is why I'm urging the court to consider its bigger staffer arguments that this whole piece of this may be moot. So I appreciate the opportunity to be able to debrief, and if not re-brief all the appeals, at least submit something to the court. Your Honor, the court is satisfied. I'm sorry. Your grace, your motion, we'll see what the court has to say in response and then we can decide whether we need to keep an additional briefing. Okay. Since it was filed on the other appeals and not on this appeal, which I found to stay, I'll go ahead and I'll file the motion in this area as well. Yes, sir. Just preserve your record. Okay. All right. Thank you both for coming in this morning. It helps us better understand where we are in this very complex situation. Your turn.
judges: Tallman, Clifton, Ikuta